NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0339n.06

Case No. 25-5621

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MUELLER BRASS COMPANY,

    Plaintiff – Appellee,

v.

DAVID CROMPTON,

    Defendant – Third Party Plaintiff – Appellant,

MUELLER INDUSTRIES, INC.

    Third-Party Defendant – Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jul 28, 2026
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

OPINION

Before: GIBBONS, MURPHY, and HERMANDORFER, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. This litigation began in 2020 when Quick Fitting defaulted on three loans owned by Mueller Brass and entered receivership proceedings. Shortly after Quick Fitting's default, David Crompton, Quick Fitting's CEO and majority shareholder, failed to pay Mueller pursuant to his personal guaranty on one of the loans, referred to as the Antipodes Loan. Mueller subsequently brought this action to enforce Crompton's guaranty in the Western District of Tennessee. Crompton responded by filing counterclaims and third-party claims against Mueller and Mueller's parent company, Mueller Industries, for, in relevant part, breach of his guaranty, promissory fraud, fraudulent misrepresentation, negligent misrepresentation, and breach of fiduciary duty.

Two phases of litigation and rulings followed. After the parties filed cross motions to dismiss and for judgment on the pleadings, the district court ultimately dismissed most of

Crompton's claims against Mueller and Mueller Industries. The district court also partially granted Crompton's motion for judgment on the pleadings. Relevant here, it concluded that Mueller had misallocated Quick Fitting's settlement proceeds from the receivership proceedings by allocating them in such a way that fully satisfied the principal of two other loans—the first-in-priority JPM Loan and the third-in-priority Mueller Loan—but left the second-in-priority Antipodes Loan underpaid by about $1 million. That result, the district court noted, left a shortfall in the only loan subject to Crompton's personal guaranty. To redress the misallocation, the district court required Mueller to reallocate the proceeds consistently with an Intercreditor and Subordination Agreement, which fully satisfied the principal of the JPM Loan and the Antipodes Loan. But because the court found that the attorneys' fees associated with enforcing the loans and claimed by Mueller were not at issue, it did not decide how to allocate those fees.

At summary judgment, Crompton asked the district court to reallocate the settlement proceeds again to cover Mueller's attorneys' fees pursuant to the Antipodes Loan's second-in-priority position. According to Crompton, all of Mueller's attorneys' fees associated with recovering on the Antipodes Loan were ultimately the debt of Quick Fitting. Without deciding that question, the district court concluded that, under the personal guaranty, Mueller could recover from Crompton the attorneys' fees and costs it incurred to enforce the Antipodes Loan during Quick Fitting's receivership proceedings and Crompton's personal guaranty during the present litigation.

Crompton now appeals, asking us to: (1) find the district court erred by not reallocating Quick Fitting's settlement proceeds to satisfy Mueller's attorneys' fees, thus discharging his liability under the guaranty; (2) revive his claim for Mueller's alleged breach of the personal guaranty; (3) find the district court erred by dismissing his counterclaims and third-party claims

2

against Mueller and Mueller Industries for lack of standing; and (4) impose sanctions on Mueller for bad faith-litigation conduct. While we affirm the district court on the latter three grounds, we hold that the district court did not adequately assess issues arising from Crompton's request to reallocate the proceeds to cover Mueller's attorneys' fees and so remand this issue to the district court to decide in the first instance. Thus, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I.

### A. Factual Background

Appellant David Crompton was the longtime President, CEO, and majority shareholder of Quick Fitting, Inc. (Quick Fitting), a Rhode Island-based corporation. Appellee Mueller Brass Company (Mueller), a wholly owned subsidiary of Appellee Mueller Industries, Inc. (Mueller Industries), is a Memphis-based corporation that designs and supplies metal fittings. Between 2011 and 2020, Mueller maintained a business relationship with Crompton and Quick Fitting, in which Mueller purchased various products from Quick Fitting and resold those products to distributors, retailers, and consumers.

Quick Fitting began having financial problems in late 2019. Seeking to reverse course, Quick Fitting signed two promissory notes to receive approximately $3 million from Antipodes Acquisitions Limited (referred to collectively as the Antipodes Loan), a New Zealand-based limited liability company. This loan was secured by all of Quick Fitting's assets. The parties' agreement provided that Quick Fitting would, if it defaulted on the Antipodes Loan, "pay all reasonable and necessary costs and expenses actually incurred in connection" with the note holder's "exercise or endeavor to exercise any of its remedies hereunder or under [the] Loan

Agreement or any agreements securing this Note," "including without limitation, reasonable attorneys' fees." DE 1-1, Antipodes Loan, Page ID 16, 23.

Quick Fitting then obtained a $4 million loan—secured by those same assets—from JP Morgan Chase Bank (referred to as the JPM Loan). Before providing the JPM Loan, however, JP Morgan insisted that it receive a first priority security interest in Quick Fitting's assets. Antipodes agreed to sign a subordination agreement that would give the JPM Loan first priority; however, before doing so, it required Crompton to sign a personal guaranty of payment on the Antipodes Loan.

Crompton executed the personal guaranty for the Antipodes Loan in September 2019. If Quick Fitting defaulted on its obligations, the guaranty provided that Crompton's personal liability would "be primary, direct and immediate." DE 1-2, Personal Guaranty, Page ID 58. It further explained that Crompton's obligation to "pay[] in accordance with the terms of [the] guaranty shall not be impaired, modified, changed, released or limited . . . by any impairment, modification, change, release or limitation" of Quick Fitting's liability "in bankruptcy or reorganization." *Id.* at 60. Crompton's guaranty also provided that he would "reimburse the holder of the [Antipodes Loan], upon demand, for all expenses incurred in connection therewith, including, without limitation, reasonable attorneys' fees," if the holder enforced the guaranty "by suit or otherwise, or if the" noteholder "exercise[d] or endeavor[ed] to exercise any of its remedies under the notes, the loan agreement, the security documents or any instrument or agreement securing the notes or this guaranty." *Id.* at 63. Quick Fitting and Antipodes then amended the Antipodes Loan to reflect these changes: first, that the Antipodes Loan was second-in-priority to the JPM Loan; second, that Crompton would personally guarantee the loan's payment; and third, that Crompton's personal

guaranty constituted a "Security Document" for the loan. DE 1-3, First Amend. & Note Mod., Page ID 66.

In March 2020, Mueller became one of Quick Fitting's secured creditors when it established its own $4 million working capital fund for Quick Fitting. Mueller then signed an Intercreditor and Subordination agreement with JP Morgan and Antipodes, which articulated the creditors' order of priorities in Quick Fitting's assets. The parties defined the JPM Loan (first-in-priority) and the Antipodes Loan (second-in-priority) as the "Senior Loans," and the Mueller Loan as the "Subordinated Loan" with a third-in-priority interest in Quick Fitting's assets. DE 70-3, Intercreditor and Subord. Agreement, Page ID 1052. The agreement provided that "until the Senior Loans have been paid in full and are no longer outstanding, . . . the Subordinated Loan is and shall be subordinated in right of payment to the Senior Loans in accordance with this Agreement." *Id.* at 1054. It further explained that, in the event of Quick Fitting's liquidation or sale, the parties' "respective rights and priorities" would remain "the same as the priorities" specified in the Intercreditor and Subordination Agreement. *Id.* at 1055. Crompton signed the agreement on Quick Fitting's behalf.

Shortly thereafter, Mueller consolidated its ownership of Quick Fitting's secured debt. On April 15, 2020, Mueller purchased the JPM Loan and received all of JP Morgan's rights and interests in its loan, including its first-in-priority security interest in Quick Fitting's assets. On May 1, 2020, Mueller also purchased the Antipodes Loan. Mueller's purchase did not alter the Antipodes Loan's second-in-priority position or its status as a Senior Loan pursuant to the Intercreditor and Subordination Agreement. Nor did Mueller waive Crompton's guaranty as part of the deal. Crompton accepted and consented to Mueller's purchase of the Antipodes Loan on Quick Fitting's behalf.

Around the same time, Quick Fitting defaulted on each of the relevant loans—the JPM Loan, the Antipodes Loan, and the Mueller Loan—all of which were now owned by Mueller. Mueller sent Quick Fitting default notices for these breaches on June 1, 2020. A week later, Quick Fitting entered receivership proceedings in Rhode Island state court. The Rhode Island Superior Court appointed Quick Fitting a Receiver on June 9, 2020, and enjoined Quick Fitting's creditors from bringing any legal action that would affect Quick Fitting or its assets.

During receivership proceedings, Mueller filed proof of its three secured claims against Quick Fitting totaling $10,522,759.02. This total included attorneys' fees and costs. Mueller also filed unsecured claims against Quick Fitting totaling $1,953,488.42.

In December 2020, the Receiver sold Quick Fitting's assets for $24,000,000, which left the company with a "cash on hand" amount of approximately $18.6 million. DE 70-5, Receiver's First Interim Rep., Page ID 1093. After the sale, Mueller and the Receiver negotiated to settle Mueller's secured and unsecured claims, as well as Quick Fitting's potential lender liability claims against the company. The Receiver ultimately recommended that the court approve an aggregate settlement of Mueller's secured claims for $9,487,500.00, with Mueller agreeing to waive all its unsecured claims. But the Receiver disagreed with Mueller's proposed payment plan, under which it sought to allocate the settlement proceeds differently than the loan priorities set out in the Intercreditor and Subordination Agreement. Mueller's proposed allocation specifically provided that Mueller would overpay the first-in-priority JPM Loan and the third-in-priority Mueller Loan, while it would underpay the Antipodes Loan by about $1 million.

At a May 2021 proceeding to approve the Settlement Agreement, the Receiver reiterated to the Rhode Island court that it approved only the total settlement but did not approve Mueller's proposed allocation. The court ultimately agreed with the Receiver's recommendation.

6

It therefore approved the aggregate payment of $9,487,500 to Mueller but explained that its decision did not "reflect[] the Receiver's or the Court's position as to, or approval of, Mueller's [proposed] allocation of the settlement payment." DE 70-2, Super. Ct. Order, Page ID 1050.

## B. Procedural History

On July 1, 2020, Mueller sent Crompton a notice demanding full payment of the Antipodes Loan pursuant to his personal guaranty. After Crompton failed to pay, Mueller sued Crompton in the Western District of Tennessee for breach of the personal guaranty on July 10, 2020. In its complaint, Mueller sought, among other things, damages for Crompton's breach of his personal guaranty, the reasonable attorneys' fees and expenses it incurred to bring the action, and all "other and further relief to which Mueller . . . may be entitled, whether under statute, contract, principles of equity, or at law." DE 1, Compl., Page ID 11–12.

The district court denied Crompton's motion to dismiss for lack of personal jurisdiction and to stay the action pending the conclusion of Quick Fitting's receivership. Crompton then answered and filed counterclaims and third-party claims for breach of contract, promissory fraud, fraudulent misrepresentation, negligent misrepresentation, and breach of fiduciary duty against Mueller and Mueller's parent company, Mueller Industries.

Mueller and Mueller Industries each moved to dismiss Crompton's claims, while Crompton moved for judgment on the pleadings. The district court dismissed all of Crompton's amended counterclaims and third-party claims against Mueller and Mueller Industries, except for Crompton's claims that Mueller breached the Antipodes Loan and the personal guaranty. But upon Mueller's later motion to revise, the district court concluded that it had misinterpreted Crompton's personal guaranty and thus granted Mueller's motion to dismiss Crompton's claim for breach of his personal guaranty.

The district court also concluded that Mueller had erroneously allocated the settlement proceeds and directed it to reallocate the proceeds in accordance with the Intercreditor and Subordination Agreement. This required Mueller to fully allocate the aggregate settlement to the principal of the first-in-priority JPM Loan and the second-in-priority Antipodes Loan. Because the district court found that "the third-in-priority Mueller Loan and any claimed attorneys' fees d[id] not appear to be at issue," it did "not render judgment as to their allocation." DE 104, Order Mot. to Dismiss & Mot. J. Pleadings, Page ID 1915. It also concluded, based on this reallocation, that "Quick Fitting's settlement payment fully satisfied the Antipodes Loan." *Id.* The district court therefore granted Crompton's motion for judgment on the pleadings in part but denied the motion as to the damages owed by Crompton to Mueller.

In November 2022, the parties filed competing motions for summary judgment. Mueller argued that it was entitled to recover from Crompton the attorneys' fees, costs, and expenses that it incurred both during Quick Fitting's receivership proceedings and in the current litigation to enforce Crompton's personal guaranty. Mueller also requested summary judgment on Crompton's claim that it had breached the Antipodes Loan. Crompton, by contrast, asked the court to reconsider its order dismissing his breach of guaranty claim and grant him partial summary judgment on this basis as to liability and damages. He also requested that the district court, consistent with the Antipodes Loan's second-in-priority position, reallocate Quick Fitting's settlement proceeds a second time in order to satisfy Mueller's claimed attorneys' fees and costs.

The district court granted Mueller's motion for summary judgment and denied Crompton's motion for summary judgment. Regarding Crompton's motion, the court found that Mueller did not breach the Antipodes Loan, and, even if it did, Crompton could not show any resulting

damages. It further rejected Crompton's motion to revise its previous order to reinstate his breach of guaranty claim.

The district court granted Mueller's motion for summary judgment on its breach of guaranty claim, noting that it "previously determined that Crompton breached the Personal Guaranty when Quick Fitting defaulted on its debt and entered receivership in early 2020." DE 189, Order Mot. Summ. J., Page ID 3307 (citing DE 163, Order Mot. to Revise, Page ID 2388 n.2). It also concluded that Mueller could recover from Crompton because the personal guaranty and associated loan instruments each contained repayment provisions. The district court thus found that Crompton had to reimburse Mueller for the attorneys' fees and costs that it incurred when it enforced the Antipodes Loan during the receivership proceedings and pursued Crompton under his personal guaranty. But it did not analyze Crompton's argument that the settlement proceeds should cover Mueller's claimed attorneys' fees and costs.

After additional briefing, the district court concluded that Mueller was entitled to $457,324.31 in attorneys' fees and costs and found Crompton liable to pay that amount. Crompton timely appealed.

## II.

We review a district court's grant of summary judgment de novo. *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016). Summary judgment is appropriate when a party establishes that there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under the governing law, and an issue regarding a material fact is genuine if the evidence would allow a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). On appeal, we must "believe the non-moving party's evidence and draw all justifiable inferences in that party's favor." *Dutton v. Shaffer*, 171 F.4th 858, 869 (6th Cir. 2026).

We also review a district court's grant of a motion to dismiss de novo. *Moshi v. Kia Am., Inc.*, 155 F.4th 652, 656 (6th Cir. 2025). "To survive a motion to dismiss, a complaint must contain enough facts, taken as true, to state a claim that is 'plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In deciding a motion to dismiss, we may, without converting the motion into one for summary judgment, consider documents that are attached to the pleadings, documents that are referred to in the pleadings and are integral to the claims, and matters of public record. *See Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

Finally, we review a district court's decision whether to impose sanctions for abuse of discretion. *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010). "A court abuses its discretion if it 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Bojicic v. DeWine*, 145 F.4th 668, 670–71 (6th Cir. 2025) (quoting *Hall v. Liberty Life Assurance Co. of Bos.*, 595 F.3d 270, 275 (6th Cir. 2010)).

## III.

Crompton makes four arguments on appeal. First, he argues that the district court erred by not reallocating Quick Fitting's settlement proceeds a second time to cover Mueller's claimed attorneys' fees and costs. Second, he contends that the district court erred when it dismissed Crompton's breach of guaranty claim for Mueller's subordination of the Antipodes Loan behind the third-in-priority Mueller Loan. Third, he maintains that the district court erred when it dismissed his tort claims for lack of standing. Fourth, he argues that the district court abused its discretion by not imposing sanctions against Mueller and Mueller Industries for bad-faith litigation conduct. We address each issue in turn.

10

**A.**

**1.**

We begin with Crompton's reallocation claim. When deciding the parties' competing motions to dismiss and motion for judgment on the pleadings, the district court reallocated Quick Fitting's settlement proceeds to fully satisfy the principal of the first-in-priority JPM Loan and the second-in-priority Antipodes Loan. Because the Mueller Loan and attorneys' fees were not yet at issue, the district court did "not render judgment as to their allocation." DE 104, Order Mot. to Dismiss & Mot. J. Pleadings, Page ID 1915. At summary judgment, Crompton argued that Mueller's attorneys' fees constituted part of Quick Fitting's debt. He therefore asked the district court to reallocate the proceeds again to fully satisfy Mueller's claimed attorneys' fees in accordance with the Antipodes Loan's second-in-priority position. But the district court never examined this issue. It instead found Crompton liable to repay Mueller's attorneys' fees because his guaranty included repayment provisions, which imposed on him "unambiguously broad" liability to reimburse Mueller for the attorneys' fees it incurred to enforce its contractual remedies. DE 192, Order Attorneys' Fees, Page ID 3643 (citation omitted); *see also* DE 189, Order Mot. Summ. J., Page ID 3307–08.

At this stage, no party contests the district court's decision to allocate Quick Fitting's settlement proceeds consistently with the priorities articulated in the Intercreditor and Subordination Agreement. But Crompton argues that the district court erred when it declined to reallocate the proceeds a second time. As before, he contends that the attorneys' fees Mueller incurred to enforce the Antipodes Loan and the personal guaranty were Quick Fitting's obligation, meaning the district court should have reallocated the settlement proceeds again to cover these expenses and discharge his liability under his guaranty.

11

We find that the district court erred in its treatment of Crompton's attorneys' fees argument. Specifically, it appears the district court conflated two of Crompton's contentions: (1) Mueller's attorneys' fees are Quick Fitting's obligation and thus part of the Antipodes Loan itself, which means the proceeds should be reallocated again to cover those fees in accordance with the loan's second-in-priority position; and (2) even if the fees are not part of the underlying debt, Crompton would still not be contractually liable as a personal guarantor to pay them. The district court bypassed the first question and decided only the second one, concluding that the guaranty's repayment provisions required Crompton to reimburse Mueller in full for its attorneys' fees and costs.

In this circumstance, "the general rule" is that we will "not consider an issue not passed upon below." *Jackson v. City of Cleveland*, 925 F.3d 793, 812 (6th Cir. 2019) (quoting *Lindsay v. Yates*, 498 F.3d 434, 441 (6th Cir. 2007)). This principle is "not jurisdictional," however, so "a departure from this general rule may be warranted when 'the issue is presented with sufficient clarity and completeness and its resolution will materially advance the progress of [an] already protracted litigation.'" *Id.* at 812–13 (citation modified).

We choose to follow the general rule and decline to address this issue in the first instance. Although there is briefing on this issue and this litigation has been highly protracted, several unanswered questions remain that would benefit from additional briefing and consideration. Specifically, it is not clear which sources of law the district court consulted when interpreting the interplay of Mueller's attorneys' fees, the Antipodes Loan's terms, and the guaranty's application in this context. Perhaps the court assumed that this choice-of-law issue did not matter, as it had done earlier in the proceedings. But the current record leaves things unclear.

Moreover, an inquiry will be required, under the applicable law, as to whether Mueller's attorneys' fees are part of the Antipodes Loan itself, such that Quick Fitting's settlement proceeds must be reallocated again in accordance with the debt's second-in-priority position. The terms of the receivership settlement—insofar as it encompasses attorneys' fees—may bear on that inquiry. So too might the district court's delineation of the attorneys' fees Mueller incurred in the course of enforcing the guaranty against Crompton, on one hand, and the attorneys' fees Mueller incurred in the course of the receivership proceedings to enforce the Antipodes Loan, on the other. Thus, we vacate the district court's award of attorneys' fees to Mueller and remand to the district court to consider Crompton's reallocation argument in the first instance.[1]

**2.**

We also reject Mueller's attempt to invoke judicial estoppel on appeal to prevent Crompton from asserting his reallocation argument because he argued at the district court that the settlement proceeds should be apportioned in order of loan priority. "[J]udicial estoppel prohibits a litigant from convincing a court to adopt one position at one time and then seeking the opposite position at a later time." *Mackey v. Rising*, 106 F.4th 552, 567 (6th Cir. 2024) (citation modified). Although courts usually "apply judicial estoppel when a party takes conflicting positions across

---

[1] We disagree with Crompton to the extent that he argues the district court's earlier decision requiring Mueller to reallocate Quick Fitting's settlement proceeds establishes that the "law-of-the-case" entitled him to a second reallocation to fully cover Mueller's claimed attorneys' fees. CA6 R. 28, Appellant Br., at 16, 25. Under the law-of-the-case doctrine, "a court should not reconsider a legal issue it resolved at a prior stage of the same case." *Kilnapp v. City of Cleveland*, 167 F.4th 909, 917–18 (6th Cir. 2026) (citation modified). Here, in deciding the parties' motions to dismiss and motion for judgment on the pleadings, the district court expressly held that it did "not render judgment as to [attorneys' fees] allocation" because "any claimed attorneys' fees d[id] not appear to be at issue." DE 104, Order Mot. to Dismiss & Mot. J. Pleadings, Page ID 1915. Crompton does not otherwise point to any other instances when the district court confronted the second reallocation question. Thus, the law-of-the-case doctrine neither binds us nor the district court in this case.

different cases, . . . the Supreme Court has suggested that it can apply at different 'phase[s]' of a single case." *Id.* (second alteration in original) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). When considering whether judicial estoppel applies, we ask three questions. *Chaney-Snell v. Young*, 98 F.4th 699, 712 (6th Cir. 2024). First, we ask whether "the party [has] taken a position in the current case that is clearly inconsistent with a position the party [previously] took." *Id.* (citation modified). Second, whether "the earlier position prevail[ed]" and thus "create[d] a perception that the . . . court has been misled[.]" *Id.* And third, whether "this flip-flopping [would] give the party an unfair advantage or impose an unfair detriment on the other side[.]" *Id.* (citation modified).

Mueller's argument fails at the first prong. To satisfy this element, "a party must have made two impossible-to-reconcile statements." *Id.* at 713. But the record shows that Crompton has argued at each stage of the litigation that Mueller's attorneys' fees should be allocated in accordance with the Antipodes Loan's second-in-priority position. For instance, in Crompton's third-party complaint, he requested that the district court "apply[] Mueller's claim for attorney[s'] fees and costs to each of the loans comprising Mueller's secured loans *pro rata*," which would "result[] in the full satisfaction of the Amended Antipodes Loan." DE 65, Am. Compl., Page ID 783. Then, in his motion for judgment on the pleadings, Crompton asked the district court to apportion Mueller's attorneys' fees and costs in order of loan priority. And, at summary judgment, Crompton argued at length that the district court should reallocate the settlement payment to Mueller's remaining attorneys' fees.

It is true that Crompton argued that Mueller "was bound by a strict order of priority in satisfying the secured loans." CA6 R. 34, Appellee Br., at 29. But that argument is not impossible to reconcile with his argument here that Mueller's attorneys' fees and costs are part of Quick

Fitting's secured debt. *See Chaney-Snell*, 98 F.4th at 713. Indeed, if on remand the district court ultimately finds that these fees are Quick Fitting's obligation, it is possible that the underlying debt will be satisfied—and thus Crompton's liability on his guaranty discharged—if the settlement proceeds are allocated consistently with the Antipodes Loan's second-in-priority position. Because Crompton "can explain why [his] current position comports with a (perhaps ambiguous) prior position," we reject Mueller's estoppel argument. *See id.*

**B.**

Crompton next argues that the district court erred when it dismissed and later denied his motion for reconsideration on his breach of guaranty claim. Specifically, he asks us to find that Mueller's misallocation of the settlement proceeds constituted a breach of the guaranty because it violated the implied covenant of good faith and fair dealing and fundamentally changed his payment obligations under the personal guaranty.[2] Because Crompton can neither (1) establish that Mueller breached the personal guaranty nor (2) show that he has any resulting damages, we affirm the district court's rejection of his claim.

**1.**

To show a breach of contract under Tennessee law,[3] a plaintiff "must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and

---

[2] To the extent Mueller asserts that Crompton's first material breach bars this claim, it twice forfeited this argument. First, by raising it in a cursory manner at the district court "[i]n a single sentence in a footnote of its summary judgment motion." *Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 487 (6th Cir. 2005). And second, "by confining it to a cursory footnote and failing to develop it" on appeal. *Ohio Telecomm. Ass'n v. Fed. Commc'ns Comm'n*, 150 F.4th 694, 722 n.14 (6th Cir. 2025). Thus, we do not consider its argument here.

[3] In deciding the parties' cross motions for summary judgment, the district court applied Tennessee law when considering whether Mueller (1) breached the implied covenant of good faith and fair dealing and (2) successfully demonstrated damages as a result of Mueller's purported breach of the guaranty. Neither party challenges this choice-of-law determination on appeal. Thus, we apply

damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). "A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). Our starting point for determining the parties' intent is to examine the contract's plain meaning to determine whether the language is ambiguous. *Id.* And "[i]n commercial transactions, a guarantor is 'held to the full extent of his engagements,' so in construing the guaranty, 'the words of the guaranty are . . . taken as strongly against the guarantor as the sense will admit.'" *Shreibman v. First Class Corp.*, 2018 WL 6721482, at *3 (Tenn. Ct. App. Dec. 21, 2018) (quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 804–05 (Tenn. 1975)).

Crompton fails to identify any specific provision of his personal guaranty that Mueller breached. Instead, Crompton broadly asserts that Mueller breached its obligations under the guaranty by unilaterally subordinating the Antipodes Loan's second-in-priority position and refusing to apply the settlement proceeds consistently with the Intercreditor and Subordination Agreement's terms. This decision, he says, violated the implied covenant of good faith and fair dealing and effectuated a "fundamental change" of the guaranty's terms. CA6 R. 28, Appellant Br., at 29–30. We disagree.

**i.**

As an initial matter, "Tennessee courts do not recognize an independent good-faith cause of action, so parties cannot use this doctrine to add duties to a contract that do not fall within its four corners." *Clippinger v. State Farm Auto. Ins. Co.*, 173 F.4th 817, 831 (6th Cir. 2026) (en

---

Tennessee law to address this claim. *See GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998) (citation omitted) ("Unlike jurisdictional issues, courts need not address choice of law questions *sua sponte*.").

banc). "The implied obligation of good faith and fair dealing" thus cannot "be used to circumvent or alter the specific terms of the parties' agreement." *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 666 (Tenn. 2013) (citation modified) (quoting *Lamar Advert. Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009)). But even though the implied covenant "does not create new contractual rights or obligations, it [does] protect[] the parties' reasonable expectations as well as their right to receive the benefits of their agreement." *Id.* (citation modified).

All the same, "a party contending that there has been a breach of the implied covenant of good faith and fair dealing must connect that contention to a claim for breach of a specific contractual provision." *Beijing Fito Med. Co., Ltd. v. Wright Med. Tech., Inc.*, 763 F. App'x 388, 393 (6th Cir. 2019). A breach of the implied covenant thus "'may be an element or circumstance' of a breach of contract, but a party alleging a breach must identify a provision of the contract that the other party has breached." *Id.* (quoting *Solomon v. First Am. Nat'l Bank of Nash.*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989)). Here, Crompton fails to identify any specific provision of his personal guaranty that Mueller allegedly breached. That failure is fatal to his claim. *See id.*

### ii.

Crompton also argues that Mueller's subordination of the Antipodes Loan behind the third-in-priority Mueller Loan constituted a "fundamental change" that resulted in a breach of his personal guaranty. CA6 R. 28, Appellant Br., at 30. We reject this claim.

To begin, the "material alteration" doctrine, which Crompton invokes, is a defense to an action for breach of contract that excuses non-performance, not an independent theory of liability that allows a plaintiff to establish an affirmative breach of contract claim. As Crompton notes, the majority rule is that "[a] guarantor is discharged if, without his or her consent, the contract of

17

guaranty is materially altered." CA6 R. 28, Appellant Br., at 16, 30 (quoting 38A C.J.S. Guaranty § 97, at 704 (2008)). But the remedy for a material alteration is that the guarantor is discharged or released from repaying the underlying debt, not that the guarantor can assert his own claim for breach of contract. *See* 38A C.J.S. Guaranty § 98 (2026). Indeed, each of the cases Crompton cites, including those he gestures to from his motion for judgment on the pleadings, involve discharge or release rather the breach of contract posture present here. *See, e.g.*, *Crossville, Inc. v. Kemper Design Ctr., Inc.*, 758 F. Supp. 2d 517, 530 (M.D. Tenn. 2010) (remedy was that "defendants [were] not liable as guarantors for repayment" of debt); *Eagerton v. Vision Bank*, 99 So. 3d 299, 308 (Ala. 2012) (guarantor "discharged from any further obligations under their guaranty contracts"); *Univ. Bank & Tr. Co. v. Dunton*, 655 F.2d 23, 25 (1st Cir. 1981) (guarantor's "obligation under the guaranty was discharged"); *see also* DE 70-1, Crompton Mot. J. Pleadings, Page ID 1044–45.

Moreover, Mueller's subordination of the Antipodes Loan did not increase the principal amount that Crompton was required to pay under the guaranty. As Mueller highlights, Crompton's alleged liability for breach of the guaranty has always been "the balance of the [Antipodes Loan], beginning [from his breach] in June 2020." CA6 R. 34, Appellee Br., at 41. Crompton's reliance on *Crossville* is thus unpersuasive. There, by contrast, the district court premised its conclusion that the signing of the new note was not the kind of "modification" that the guaranty permitted on the fact that the new liability constituted "a threefold increase in outstanding principal," and was thus "not a moderate, limited change." 758 F. Supp. 2d at 526–27. The court also expressly distinguished "other cases cited by the plaintiff" where alterations to the underlying promissory notes constituted valid "modifications" when the conduct involved changes "other than increases

of principal." *Id.* at 529. For these reasons, we reject Crompton's reliance on the "fundamental change" doctrine to show that Mueller breached his personal guaranty.

**2.**

Even if Crompton could establish breach, his claim would nonetheless fail because he still cannot show any resulting damages. Crompton argues that he can show damages because he incurred attorneys' fees to defend against Mueller's purported breach of his guaranty. But Tennessee follows the American Rule, which provides that "a party in a civil action may recover attorney[s'] fees only if: (1) a contractual or statutory provision creates a right to recover attorney[s'] fees; or (2) some other recognized exception to the American [R]ule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). Under this approach, "[a]ttorney[s'] fees are not ordinarily an element of contract damages." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 705 (Tenn. 2019).

Recognizing this contrary precedent, Crompton argues that "his reasonable attorneys' fees in this case . . . are recoverable because they are the only harm Crompton can show flowing from [Mueller's alleged] breach" and "therefore are an essential element of his counterclaim." CA6 R. 28, Appellant Br., at 31 (emphasis removed). He analogizes his case to *Anchor Motor Freight, Inc. v. Int'l Brotherhood of Teamsters*, 700 F.2d 1067 (6th Cir. 1983), where we found that attorneys' fees could constitute actual damages when the fees were "the subject of the law suit itself." *Id.* at 1072 (citation omitted). But Crompton's attempt to rely on *Anchor Motor* is unpersuasive for two reasons. First, *Anchor Motor* applied federal common law, not the Tennessee law at issue here. *Id.* Second, *Anchor Motor* is distinguishable because the attorneys' fees there were the "subject of the law suit" because they were "incurred in defending against an action filed

in breach of a covenant not to sue." *Id.* (citation omitted). Here, by contrast, Crompton's attorneys' fees were incurred defending against his undisputed breach of the personal guaranty, not as part of an "agreement" that "create[d] a right to sue or not to be sued," as he attempts to argue. CA6 R. 35, Reply Br., at 17. Nor does Crompton point to any other specific exception to the American Rule that may apply under Tennessee law.

Thus, we affirm the district court's grant of Mueller's motion to dismiss and its subsequent denial of Crompton's motion for reconsideration on his breach of guaranty claim.

## C.

In his third claim on appeal, Crompton challenges the district court's decision to grant Mueller's and Mueller Industries's motions to dismiss his fraud, misrepresentation, and breach of fiduciary duty claims. On appeal, Crompton seeks to resurrect only his "offensive" tort claims "brought in his personal capacity, alleging personal harm." CA6 R. 28, Appellant Br., at 34, 37 (emphases removed). The district court granted Mueller's and Mueller Industries's motions to dismiss these claims, concluding that "Crompton concede[d] that he [could not] assert his offensive claims," and, in the alternative, found that he lacked standing to pursue these claims as a personal guarantor. DE 104, Order Mot. to Dismiss & Mot. J. Pleadings, Page ID 1921–22. We find that Crompton abandoned these claims in the district court and thus we do not address their merits on appeal.

In its motion to dismiss, Mueller argued that Crompton's tort claims should be dismissed because they were derivative of Quick Fitting's claims and Crompton thus lacked standing to assert them in his personal capacity. Mueller highlighted numerous cases—within the Sixth Circuit and our sister circuits—holding that personal guarantors lack standing to assert these kinds of claims. In his opposition to Mueller's motion to dismiss, Crompton made no effort to rebut Mueller's

argument that he lacked standing to assert the offensive claims. He argued instead that Mueller's argument failed "because the cases and principle[s] of law [it] rel[ied] upon [did] not apply to defensive, rather than offensive, claims made" in the personal guarantor context. DE 71, Crompton Opp. Mot. to Dismiss, Page ID 1167. He continued that Mueller's cases were "[i]napt" because they did not "apply to the circumstances presented here, specifically, where a guarantor asserts claims defensively to obtain a rightful offset of liability." *Id.* at 1168. Crompton lastly defended his ability to bring these claims "defensively to achieve a set-off against the amount he otherwise would owe to the creditor," arguing that he "is entitled to raise them defensively, regardless of whether they are derivative or not." *Id.* at 1167–68.

By failing to defend his claim that he has standing to assert his personal tort claims offensively at the district court, Crompton waived these arguments on appeal. "Under ordinary litigation principles, a waiver of a right requires some affirmative signal of 'abandonment.'" *Hunter v. United States*, 146 S. Ct. 1702, 1710 (2026) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). And a party abandons a "claim by failing to defend it in response to" a motion to dismiss. *Kellar v. Yunion, Inc.*, 157 F.4th 855, 882 (6th Cir. 2025); *see also United States v. Clark*, 24 F.4th 565, 577 (6th Cir. 2022). In this case, Crompton abandoned his personal tort claims by failing to defend that he had standing to raise them in response to Mueller's motion to dismiss. Thus, we do not consider these claims on appeal. *See Kellar*, 157 F.4th at 882.

**D.**

Crompton finally asks us to impose sanctions on Mueller and Mueller Industries in the form of attorneys' fees and costs for their purported bad-faith litigation conduct. Crompton first developed his argument that the district court should impose sanctions on Mueller in his reply in

support of his summary judgment motion.[4] The district court never expressly ruled on Crompton's request. On appeal, Crompton reiterates this request, asserting that Mueller abused the legal system when it intentionally misallocated the settlement proceeds to leave Crompton's obligations intact as a personal guarantor on the Antipodes Loan; pursued Crompton in litigation despite having received the settlement from the Receiver; objected to most of Crompton's discovery requests; and claimed attorneys' fees from Quick Fitting's receivership proceedings. Mueller responds that its conduct amounts to "normal litigation" tactics and we should "summarily den[y]" Crompton's request. CA6 R. 34, Appellee Br., at 51, 54. We agree with Mueller and reject Crompton's attempt to impose sanctions on the Mueller parties.

When a party engages in vexatious litigation behavior, federal courts may require them to reimburse legal fees and costs to the other side. *See Wesco Ins. Co. v. Roderick Linton Belfance, LLP*, 39 F.4th 326, 337 (6th Cir. 2022). For instance, a court may require "a party to pay attorney[s'] fees if the party engages in conduct that abuses the judicial system—say, by concealing documents or disobeying court orders." *Id.* (citing *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017)). Or "[a] court may assess attorneys' fees under its inherent powers 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (quoting *Chambers v. NASCO, Inc.*, 501

---

[4] Crompton also referenced sanctions two other times during the summary judgment stage: first, when he sought in a footnote to "reserve[] his right to seek his attorneys' fees under [the district court's] implied power to award fees" in his motion for summary judgment, and second, when he summarily argued in the introduction to his response to Mueller's motion for summary judgment that Mueller "could and should face sanctions" for its litigation conduct. DE 178-1, Crompton Mot. Summ. J., Page ID 2501 n.3; DE 182, Crompton Response Mot. Summ. J., Page ID 3109. Because these sanctions arguments were wholly undeveloped, we construe Crompton to have first made his request for sanctions in his reply in support of his motion for summary judgment. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009).

U.S. 32, 45–46 (1991)). To show bad faith, the court must "find [1] that 'the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment.'" *Id.* (quoting *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010)).

A district court retains broad discretion not to impose sanctions. *Collier v. LoGuiduice*, 818 F. App'x 506, 513 (6th Cir. 2020). Thus, we review a district court's decision to deny sanctions for abuse of discretion. *Bojicic*, 145 F.4th at 670. A "court abuses its discretion if it 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Id.* at 670–71 (quoting *Hall*, 595 F.3d at 275).

The district court did not abuse its discretion here. Indeed, Crompton cites no law to support his claim for sanctions. Instead, Crompton laments what appear to be legally justifiable litigation tactics. For instance, he complains that "[t]he Mueller companies' relentless pursuit . . . has saddled him with hundreds of thousands of dollars in defense costs and attorneys' fees." CA6 R. 28, Appellant Br., at 40. He continues that "it is difficult to fathom any legitimate business purpose in a multi-billion dollar corporate family continuing to pursue an individual entrepreneur solely for attorneys' fees it will never collect." CA6 R. 35, Reply Br., at 22. But Mueller pursued Crompton—a sophisticated commercial actor—for breach of his personal guaranty that expressly permitted it to seek reimbursement for attorneys' fees and costs. Moreover, at the time Mueller brought its breach of guaranty claim, it had not received a settlement from the Receiver and there was no guarantee it would recover anything from Quick Fitting on the defaulted Antipodes Loan.

And although Crompton suggests that Mueller's allocation of the settlement funds was wrongful, he has not argued Mueller's legal arguments were frivolous. Indeed, Crompton complains about several legal arguments on which Mueller *prevailed* at the district court, including

23

the district court's imposition of attorneys' fees incurred during the receivership proceedings. And for those arguments on which Mueller did not prevail, including its allocation of the settlement proceeds, Mueller's arguments were hardly frivolous as they involved several plausibly contestable issues relating to choice of law and allocation methodology. Crompton thus cannot show that these claims were "meritless," let alone brought for an "improper purpose." *Metz*, 655 F.3d at 489. Under our deferential standard of review, we reject Crompton's attempt to impose attorneys' fees and costs on the Mueller parties for bad-faith litigation behavior.

Nor do we find an abuse of discretion because the district court did not formally reject Crompton's attempt for sanctions. For starters, as Mueller highlights, Crompton did not properly preserve a sanctions request at the district court. Indeed, Crompton first developed his argument that the district court should impose sanctions against the Mueller companies in his reply in support of his motion for summary judgment. And "arguments made for the first time in a reply brief are forfeited." *Grand v. City of Univ. Heights*, 159 F.4th 507, 516 (6th Cir. 2025); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Moreover, Crompton's sanctions motion is not a close call. In certain cases, "when the issue of sanctions is close and the district court fails to address the issue, a remand may be appropriate." *Meathe v. Ret*, 547 F. App'x 683, 690–91 (6th Cir. 2013). By contrast, as here, where "[t]he issue of sanctions is not so close, . . . the district court's lack of explanation [does not] constitute[] an abuse of discretion." *Moross Ltd. P'ship v. Fleckenstein Cap., Inc.*, 466 F.3d 508, 520 (6th Cir. 2006). Because these claims are meritless, we do not remand for further consideration of them.

## IV.

For the foregoing reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with our opinion.